**Johnny Ray BAGBY,
Petitioner–Appellant,**

v.

**Dewey SOWDERS,
Respondent–Appellee.**

No. 87–5286.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1988.

Decided Aug. 10, 1988.

B. Todd Thompson (argued), Woodward, Hobson and Fulton, Louisville, Ky., Grace M. Giesel (court-appointed), for petitioner-appellant.

` David L. Armstrong, Atty. Gen. of Kentucky, Frankfort, Ky., Mary James Young, Kay Winebrenner, Margaret M. Connolly (argued), for respondent-appellee.

Before KENNEDY and JONES, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Johnny Ray Bagby appeals from the district court's order dismissing Bagby's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with prejudice. For the following reasons, we affirm the district court's judgment in part, reverse the district court's judgment in part and remand this case to the district court with instructions to grant the writ of habeas corpus consistent with this opinion unless the Commonwealth of Kentucky grants Bagby a new trial within a reasonable time.

## I.

On June 7, 1983, a three-count indictment was returned by the Taylor County, Kentucky Grand Jury charging petitioner Johnny Ray Bagby with the offenses of first-degree rape and second-degree burglary, and with being a second-degree persistent felony offender in violation of Kentucky Revised Statutes §§ 510.040, 511.030, and 532.080 respectively. According to count 1, petitioner on May 11, 1983, "engaged in sexual intercourse with another person [Cindy Arnold] by forcible compulsion." According to count 2, petitioner, also on May 11, 1983, "with intent to commit a crime knowingly entered or remained unlawfully in the house of another person [Cindy Arnold]." Finally, according to

count 3, petitioner had three previous felony convictions.

On March 27–28, 1984, a jury trial was held in Washington Circuit Court.[1] Following trial, the court ordered and adjudged that Bagby was guilty of the crime of burglary in the second degree, rape in the first degree, but same being merged into the persistent felony second degree verdict.

Bagby appealed his conviction to the Kentucky Supreme Court. The supreme court issued a memorandum opinion and order affirming Bagby's conviction.

Subsequently, Bagby filed a *pro se* petition for the writ of habeas corpus in the United States District Court for the Western District of Kentucky. Bagby advanced seven grounds for relief which the district court noted were the same grounds urged for reversal in the Kentucky Supreme Court.

On February 13, 1987, the district court filed a memorandum and order which dismissed Bagby's petition with prejudice and denied his motion for appointment of counsel.

This timely appeal followed. Counsel has been appointed by this court. Bagby raises the following issues on appeal: (1) whether petitioner's right to due process was violated when the state court refused to instruct the jury on first-degree sexual abuse; (2) whether petitioner's right to due process was violated when the state court permitted the prosecuting witness to refer to petitioner's photograph in a "mug book"; and (3) whether petitioner's privilege against self-incrimination and Kentucky Revised Statutes § 421.225(1) were violated when the state court allowed comments at trial concerning petitioner's failure to testify.

## II.

### A.

Initially, Bagby argues that his right to due process was violated when the

---

1. The briefs indicate that on July 5, 1983, petitioner waived formal arraignment and entered a plea of not guilty to the indictment. Also, on

March 6, 1984, the trial court, pursuant to a motion by defense counsel, changed the venue from Taylor County to Washington County.

state court refused to instruct the jury on first-degree sexual abuse.[2]

"A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1987). The state court's failure to instruct the jury on lesser included offenses raises a question that is cognizable on habeas corpus review. *Brewer v. Overberg,* 624 F.2d 51, 52 (6th Cir.1980) (per curiam), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Allen v. Morris,* 845 F.2d 610, 617 (6th Cir.1988). This is so because in some cases, the failure to give a requested instruction could deprive the defendant of the fundamental right to a fair trial secured by the fourteenth amendment. *Brewer,* 624 F.2d at 52.

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court granted *certiorari* to decide the following question:

> 'May a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict?'

*Id.* at 627, 100 S.Ct. at 2384 (quoting 444 U.S. 897, 100 S.Ct. 204, 62 L.Ed.2d 132 (1979)). *Beck* involved an Alabama death penalty statute which prohibited the trial judge from giving the jury the option of convicting the defendant of a lesser included offense, i.e., it required the jury to either convict the defendant of the capital crime, in which case it was required to impose the death penalty, or acquit him. *Id.* 447 U.S. at 627–29, 100 S.Ct. at 2384–85. The Supreme Court held that since the

refusal to instruct the jury on a lesser included offense enhanced the risk of an unwarranted conviction, the state's failure to so instruct the jury violated the petitioner's due process rights. *Id.* at 633–46, 100 S.Ct. at 2387–94.

Two years later, in *Hopper v. Evans,* 456 U.S. 605, 606, 102 S.Ct. 2049, 2050, 72 L.Ed. 2d 367 (1982), the Supreme Court granted *certiorari* in a habeas case to decide the following question: "[W]hether, after invalidation of a state law which precluded instructions on lesser included offenses in capital cases, a new trial is required in a capital case in which the defendant's own evidence negates the possibility that such an instruction might have been warranted." The Court reviewed prior cases and concluded:

> *Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in noncapital cases is that a lesser included offense instruction should be given if 'there is any reasonable theory from the evidence which would support the position.' The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' The Alabama rule clearly does not offend federal constitutional standards, and no reason has been advanced why it should not apply in capital cases.

---

**2.** The Kentucky Revised Statutes provide as follows with respect to sexual abuse in the first degree:

(1) A person is guilty of sexual abuse in the first degree when:

  (a) He subjects another person to sexual contact by forcible compulsion; or

  (b) He subjects another person to sexual contact who is incapable of consent because he:

    (i) Is physically helpless; or
    (ii) Is less than twelve years old.

(2) Sexual abuse in the first degree is a Class D. felony.

Ky.Rev.Stat. § 510.110. Kentucky Revised Statutes § 510.010(7) defines "sexual contact" to mean "any touching of the sexual or intimate parts of a person not married to the actor done for the purpose of gratifying the sexual desire of either party."

*Id.* at 611–12, 102 S.Ct. at 2053 (citations omitted). The Court held that the facts in *Hopper* did not warrant an instruction on a lesser included offense.

Although *Beck* and *Hopper* were both capital cases and their holdings are accordingly limited, this court has applied their rationale in non-capital cases. For example, in *Ferrazza v. Mintzes*, 735 F.2d 967, 968 (6th Cir.1984) this court applied the principle of *Beck* and *Hopper* to a non-capital case. The court, however, held as follows: "We do not find evidence in the record below which 'warrants' an instruction on a lesser offense. The evidence supports the conviction of the petitioner for first-degree murder and does not support the commission of the crime with less culpable intent or diminished capacity." *Id.*

Similarly, in *Prather v. Rees*, 822 F.2d 1418, 1423 (6th Cir.1987), this court recently applied the principle of *Beck* and *Hopper* in a habeas case in which the petitioner claimed entitlement to an attempted second-degree robbery instruction because his gun was inoperable and therefore not a deadly weapon under Kentucky Revised Statutes § 515.020. This court reasoned as follows:

> As a matter of Kentucky law, a defendant is entitled to a lesser-included offense instruction only if the evidence would permit a jury to reasonably find the defendant guilty of the lesser-included offense but acquit him of the greater offense. This meets the 'warranting' requirement under *Hopper*. Thus, if a reasonable jury, on the evidence presented, could have convicted Prather of attempted second-degree (unarmed) robbery and acquitted him of the attempted first-degree (armed) robbery charge, then Prather's constitutional rights were violated when the trial court refused to give the lesser-included offense instruction and the habeas writ should issue.

*Id.* (citations omitted). In *Prather*, this court declined to order the writ, thus upholding the petitioner's conviction of attempted first-degree robbery, because the evidence showed that Prather intended to rob the van with the shotgun if at all, and

under Kentucky law an inoperable weapon is a deadly weapon if the defendant intends to convince the victim it is deadly. *Id.* at 1423–24.

The instant case also arises under Kentucky law. In *Reed v. Commonwealth*, 738 S.W.2d 818 (Ky.1987), the Supreme Court of Kentucky elaborated as follows with respect to instructions on lesser included offenses:

> Our law requires the court to give instructions 'applicable to every state of case covered by the indictment and deducible from or supported to any extent by the testimony.' It is irrelevant that the evidence from the parties does not indicate the need for a particular instruction. The determination of what issues to submit to the jury should be made based upon the totality of the evidence. And, as we said in *Trimble v. Commonwealth*, Ky., 447 S.W.2d 348, 350 (1969):
>
> > When the prosecution adduces evidence warranting an inference of a finding of a lesser degree of the charged offense, the court should instruct on the lesser degree even though the defendant presents the defense of alibi.

*Id.* at 822–23 (some citations omitted).

In *Reed*, the appellant was convicted of one count of first-degree rape and sentenced to a term of twenty years in the penitentiary. He argued, among other things, that the trial court committed prejudicial error by failing to give an instruction on second-degree sexual abuse. The appellant denied any sexual contact with the victim, but she testified positively that he raped her on five occasions. The Supreme Court of Kentucky noted that "[o]rdinarily, such evidence would not suggest the need for an instruction on any lesser included offense." *Id.* at 822.

> In this case, however, there was other evidence from which the jury might have concluded that appellant was guilty of the lesser offense of sexual abuse in the second degree. In addition to testifying for the Commonwealth during its case in chief, Mr. Barrett was called by the defense to give additional testimony. He

repeated that B.R.C. had given a statement to her social worker as well as the city police that her uncle had 'sexually abused' her. He also read from another report made by the social worker in which he said she made 'allegations of two incidents of sexual molestation by her uncle who was living in the home.' When asked whether the social worker's use of the terms 'sexual abuse' and 'sexual molestation' would include intercourse, Mr. Barrett said:

Social workers primarily use sexual molestation in speaking of fondling of genital areas.

. . . .

Normally we would not use sexual molestation to include sexual intercourse.

When asked what term would be used, he said:

Sexual intercourse depending upon what actually in fact happened. However, the more severe the sexual interaction the more specifically the field worker would describe the terms.

*Id.* Because, while there was substantial evidence that the appellant had committed the crime of rape, there was other evidence from which the jury could have reasonably concluded that he committed a lesser offense, failure of the trial court to properly instruct the jury was prejudicial. *Id.* at 823. For this reason, the Supreme Court of Kentucky reversed the judgment and remanded the case for a new trial.

Although decided subsequent to the Supreme Court of Kentucky's decision in this case, *Reed* did not purport to create a new rule of law in Kentucky. Therefore, there is no obstacle to its application in the instant case. *Cf. Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Similar to *Reed*, in *Blankenship v. Commonwealth*, 311 Ky. 338, 224 S.W.2d 152 (1949), the Kentucky Court of Appeals held that because there was a question of fact concerning penetration, the judgment of conviction for having carnal knowledge of a female under the age of fifteen years was reversed and the trial court was directed to instruct the jury on the common law

misdemeanor of attempting to carnally know a female under the age of consent and to instruct the jury that, if in doubt as to the degree of the offense committed, it should convict on the lesser offense. *Id.* 224 S.W.2d at 153. Following is the court's relevant analysis:

Whether such an instruction [on attempted carnal knowledge of one under the age of consent] should have been given depends on whether there was a question of fact as to penetration. Penetration must be shown to sustain a conviction for the crime with which the appellant was charged. While the prosecuting witness stated that Blankenship compelled her to have intercourse with him, both of the girls stated that upon returning to the road he remarked, 'The little wildcat wouldn't let me have it. She clawed my eyes out.' Blankenship denied penetration by his defense, which was in effect an alibi, because he said he did not force the prosecuting witness to go to the bottom with him and was never alone with her. Certainly this evidence raises a doubt on the question of penetration, which was for the jury's determination, and it follows that the principle requiring instructions upon the whole law of the case has not been complied with.

*Id.*

In the instant case, although petitioner did not take the stand himself, he presented an alibi defense. The victim testified on direct examination as follows with respect to the question of penetration:

Q. Had you as far as any injury that you, no, let me ask you first, was there any penetration, did he, tell what happened about the sexual act.

A. Yes, he had intercourse with me. Yes he did.

. . . .

Q. Alright, now the second time on the bed was there any penetration at that time?

A. Yes, he was trying, he was drunk.

Q. Now, when you say he was trying because, was he trying for penetration or do you—

A. He was trying[.]

Q. Well did he actually insert his penis inside?

A. Yes.

Q. Is there any doubt in your mind?

A. No.

On redirect examination she testified as follows:

Q. I realize the statement that you said, you know, that you were afraid, I mean, even his condition, do you know, was it a normal intercourse act or—

A. I don't know. I haven't had sex enough to tell you what exactly.

Q. Well, is there any doubt that he did have his penis inside of you?

A. There's no doubt.

Dr. Shipp, the doctor who examined the victim after the incident also testified at trial. On direct examination, he stated that he could not say technically that intercourse did or did not take place. He stated that judging from a slide he made it would appear that ejaculation in the vagina had not taken place. Dr. Shipp also testified concerning the effects of alcohol on a man's ability to perform sexually:

Q. Doctor in your medical studies, you know, in medical school and residency and also in your specialty [sic] can you state with any degree certainty [sic] as to the affects [sic] of alcohol on a man's ability to ejaculate if he's under the influence?

A. Yes, it's a well know [sic] fact that somebody, a man that's been drinking say, or not necessarily intoxicated but just had several drinks, a it [sic] cuts down on the chances, the chances of ejaculation and also performance as far as actually achieving erection and so on. Alcohol directly affects that. It can depend on the amount that, a few drinks, a person could still perform but may or may not ejaculate. A person who is intoxicated can not perform at all.

Q. Depending on the degree of a persons [sic] ability, if they had a certain amount they might have an erection but have intercourse but have no ejaculation but then at some point and time they wouldn't even be able to have an erection.

A. If they were intoxicated enough.

On cross-examination, Dr. Shipp testified that the victim sustained no genital trauma.

Police Officer Shirley Carter testified that the lab analyses of the rape kit and the victim's clothes were negative.

*Reed* and *Blankenship* make it clear that Kentucky law requires petitioner in the instant case to have received a jury instruction on first-degree sexual abuse. The victim's testimony concerning the act of penetration was equivocal. Additionally, none of the experts were able to opine that penetration had occurred. Dr. Shipp's testimony on the effects of alcohol on a man's ability to perform sexually and the negative results of the lab analyses raise further doubt on the question of penetration. Therefore, the state court should have given an instruction on the lesser offense of first-degree sexual abuse.

The Supreme Court's decision in *Beck* and *Hopper* and the cases in this circuit which construe them require this court to hold that petitioner's right to due process was violated when an instruction on first-degree sexual abuse was refused and to order the grant of the writ of habeas corpus in the instant case. Of course, this holding only pertains to petitioner's conviction of first-degree rape. We now will consider the remaining issues raised by petitioner to determine whether the writ should be granted as to his second-degree burglary conviction.[3]

### B.

██ Bagby next argues that his right to due process was violated when the state

---

**3.** We note that the remaining issues do not relate to petitioner's conviction under Kentucky's persistent felony offender sentencing statute. Kentucky's persistent felony offender sentencing statute does not create or define a criminal offense. *Hardin v. Commonwealth,* 573 S.W.2d 657, 661 (Ky.1978). "It recognizes a status and, in a proceeding separate and apart from the initial trial, fixes a penalty which is to be imposed rather than the one fixed by the jury on the initial trial." *Id.* Appellant has made no challenges which relate to this separate proceeding.

court permitted the prosecuting witness to refer to petitioner's photograph in a "mug book." "Errors of application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus actions." *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985). Erroneous evidentiary rulings which result in the denial of fundamental fairness, however, will support habeas relief. *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327, *cert. denied,* 464 U.S. 962, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983).

The Kentucky Supreme Court has recognized that the introduction into evidence of mug shots can constitute error. *See Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979) (noting in a habeas case that the Kentucky Supreme Court had already held that the introduction of mug shots without a cautionary instruction in the underlying state proceeding violated state law).

In *Eberhardt,* this court was not required to decide whether the error of admitting the mug shots in that case was of a constitutional magnitude. We noted, however, that "[t]he use of mug shots has been strongly condemned in federal trials, as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality." *Id.* at 280.

In the instant case, the transcript reveals that the following reference to a mug book was made by the victim:

Q. How long was it after that before you saw this defendant again?

A. The hearing.

Q. The hearing in court?

A. Yep. Well I seen a picture.

Q. Alright. Did anyone ever show you any pictures?

A. Yeah, Sammy Knopp brought a book, a mug book by my house—

Defense counsel's objection to this testimony was sustained immediately by the trial court, but his request for a mistrial was denied. The prosecutor stated at side bar that it did not object to an admonishment to the jury concerning this matter, but the joint appendix does not reveal that one was given. However, the prosecutor inexplicably returned to this line of questioning, referring to "pictures" rather than specifically to a mug book, without further objection or admonition from the court. Nonetheless, we are unconvinced that the victim's brief reference to a mug book, an objection to which was sustained, rendered petitioner's trial fundamentally unfair and violated due process.

## C.

Finally, Bagby argues that his privilege against self-incrimination was violated by comments at trial on his failure to testify. This court has recognized that improper comment on the failure to testify can form the basis for habeas relief. *See Raper v. Mintzes,* 706 F.2d 161 (6th Cir.1983). *Raper* also recognized a distinction between direct and indirect comments on the failure to testify:

The fifth amendment provides that 'no person ... shall be compelled in any criminal case to be a witness against himself....' An important corollary to that right is that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The rule set forth in *Griffin* applies to indirect as well as direct comments on the failure to testify. Cases involving direct comments pose little difficulty as the court must reverse unless the prosecution can demonstrate that the error was harmless beyond a reasonable doubt. Cases such as the present one, involving indirect comments on the failure to testify are more troublesome. General references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence. Such statements are more objectionable where the facts are such that only the defendant could have contradicted the evidence in question. However, we recently refused to adopt a *per se* rule that

comments as to the uncontradicted nature of evidence violated *Griffin* even where the evidence in question could only have been contradicted by the defendant. Rather, the court must conduct a 'probing analysis of the context of the comments,' in order to determine '[w]hether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'

*Id.* at 164–65 (footnote and some citations omitted).

In *Spalla v. Foltz,* 788 F.2d 400 (6th Cir.), *cert. denied,* 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362 (1986), we determined that the probing analysis referred to in *Raper* requires consideration of the following four factors:

1) Were the comments "manifestly intended" to reflect the accused's silence *or* of such a character that the jury would "naturally and necessarily" take them as such;

2) Were the remarks isolated or extensive;

3) Was the evidence of guilt otherwise overwhelming;

4) What curative instructions were given, and when.

*Id.* at 404.

In the instant case, petitioner points to two comments which he argues combine to create a violation of his privilege against self-incrimination. First, the prosecuting witness testified as follows during direct examination:

Q. Did you do anything that, what did you do that might have implied permission if anything like this happen or not do?

A. I didn't, I had never seen him before, he come barreling through the window. He knew what he was going to do before he came through that window and he did it and he admitted it. He just won't admit it now.

Second, the prosecutor made the following comment during closing argument:

Remember, about, it's uncontradicted that testimony about what happened

there. We have to assume on what Cindy said. Mr. Goff's [sic] and I agree on that cause all of that went uncontradicted about what happened in that house. You know the testimony is [sic].

Both statements constitute indirect comment on the failure to testify under *Raper.* Defense counsel objected to the first comment on the ground that the witness had commented on the defendant's guilt and moved for a mistrial. The trial court overruled the objection. Defense counsel did not object to the second comment. Respondent has argued, therefore, that petitioner is barred by procedural default from challenging the prosecutor's comment. *See Raper,* 706 F.2d at 163–64.

■ The victim's comment that "[h]e just won't admit it now," can be construed as a comment on petitioner's failure to testify. The comment could also be construed to mean that if and when petitioner did testify he would deny "it." Particularly since the comment was made during the prosecution's case in chief when petitioner had not yet testified, this construction of the comment is entirely reasonable. Additionally, the comment could be construed to mean that the theory of the defense at trial was that petitioner did not do "it." This construction is also reasonable since the comment does not refer specifically to petitioner's failure to testify.

The first factor in *Spalla* requires that the comment be manifestly intended to reflect the accused silence or of such a character that the jury would naturally and necessarily take it as such. The comment that "[h]e just won't admit it now" does not satisfy the first factor in *Spalla.*

■ With respect to the second comment, we begin by noting that when a respondent maintains that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, this court must undertake a complex analysis. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the

rule." *Id.* Failure to abide by a state's contemporaneous objection rule will bar habeas relief under certain circumstances. *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir.1985). Kentucky cases have held that an appellant's failure to object contemporaneously can constitute a waiver of even a constitutional violation. *See Jackson v. Commonwealth,* 450 S.W.2d 244, 246 (Ky. 1970). In the instant case, as we have indicated above, petitioner failed to object to the prosecutor's closing argument.

Second, this court must determine whether the state courts actually enforced the state procedural sanction. *Maupin,* 785 F.2d at 138. *Cf. McBee,* 763 F.2d at 813 (stating that the cause and prejudice standard is not applied when the state court overlooks the procedural default and instead disposes of the issue on the merits). In the instant case, the Supreme Court of Kentucky's memorandum opinion does not specifically address petitioner's argument concerning the prosecutor's remarks during closing argument. Instead, the final sentence reads as follows: "The other assertions of error are either without merit or not preserved for appellate review." Thus, it is not clear whether the Kentucky Supreme Court reached the merits of petitioner's argument.

If the basis for the state court's decision is unclear, this court must look to the argument presented to the state court. *Raper,* 706 F.2d at 164. This court has applied the following rules, taken from the Second Circuit's opinion in *Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982), to ascertain the basis of the state court's decision:

(1) if the state prosecutor only argued the merits of the petitioner's claim before the state court and failed to raise the procedural default issue the federal court may assume that the state court ruled only on the merits; (2) if the prosecutor relied solely on the procedural default the federal court may assume that that was the only basis for the state court's decision; and (3) if the prosecutor argued in the alternative the federal court may assume that the state court

did not rely solely on the merits unless it says so.

*Raper,* 706 F.2d at 164. In the instant case, the state argued procedural default and the merits in the alternative. Therefore, this court may assume that the state court did not rely solely on the merits of petitioner's argument concerning the prosecutor's closing argument.

The third step in the *Maupin* analysis requires this court to determine whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a constitutional claim. *Maupin,* 785 F.2d at 138. In the instant case, petitioner does not argue that it is not.

Fourth, the petitioner must demonstrate that there was cause for him to not follow the state procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* In the instant case, petitioner has given no explanation for his procedural default.

In addition to the four-step *Maupin* analysis we must consider that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas corpus court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986). In *Ewing v. McMackin,* 799 F.2d 1143 (6th Cir. 1986), we noted that

[o]ur task in this respect is to distinguish 'actual' from 'legal' innocence, and determine whether 'refusal to consider the defaulted claim on federal habeas carries with it the risk of a manifest miscarriage of justice.' Relief is not warranted where 'the alleged constitutional error neither precluded the development of true facts nor resulted in the admission of false ones.' A petitioner fails to persuade a federal court to look past the cause and prejudice test '[w]hen the alleged error is unrelated to innocence, and when the defendant was represented by competent counsel, had a full and fair

opportunity to press his claim in the state system, and yet failed to do so in violation of a legitimate rule of procedure.'

*Id.* at 1152 (quoting *Smith v. Murray,* 477 U.S. 527, 538–39, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986)). There is no indication that this is an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent. Therefore, this exception does not apply.

We hold, therefore, that petitioner's argument that the prosecutor's comment during closing argument violates his privilege against self-incrimination is barred by procedural default.

For the foregoing reasons, we AFFIRM the district court's judgment insofar as it relates to petitioner's conviction of second-degree burglary and conviction under the persistent felony offender sentencing statute. However, we REVERSE the district court's judgment insofar as it relates to petitioner's conviction of first-degree rape, and REMAND this case to the district court with instructions to issue the writ of habeas corpus consistent with this opinion unless the Commonwealth of Kentucky grants Bagby a new trial within a reasonable period of time.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's holding that the victim's comment does not satisfy the first factor in *Spalla v. Foltz,* 788 F.2d 400 (6th Cir.), *cert. denied,* 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362 (1986).

With respect to the second comment by the prosecutor, I agree with the court's *Maupin* analysis. However, I do not agree that we should follow the rules taken from the Second Circuit's opinion in *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

In his brief to the Kentucky Supreme Court, Bagby challenged four separate comments made by the prosecutor during closing argument. In its responsive brief, the state argued that each of the four comments was not properly before the Court because of a failure to object at trial. The state then argued in the alternative that there was, in any case, no merit to Bagby's challenge. In these circumstances, it is impossible for us to know whether the Kentucky Supreme Court held as a matter of state law that it could not review the claim now before this Court because of Bagby's procedural default.

There is dicta in *Raper v. Mintzes,* 706 F.2d 161 (6th Cir.1983) that appears to create a presumption to the contrary ("if the prosecutor argued in the alternative, the federal court may assume that the state court did not rely solely on the merits unless it says so," 706 F.2d at 164.) However, the *Raper* court was merely describing the standard set forth in *Martinez,* where the Second Circuit explicitly limited the applicability of its rule to silence on the part of the Appellate Division of the New York Supreme Court, an intermediate appellate court. The basis of the rule was the fact that the Appellate Division does not routinely invoke the discretionary jurisdictional basis on which a decision on the merits might be based. *Id.* at 54 & n. 5.

Subsequent to *Raper,* we held that the fact that the state prosecutor argued in the alternative to the state appellate court which then disposed of the issue in an ambiguous manner does not invariably indicate that the state has relied on the procedural default as independent and adequate state grounds to affirm the conviction. *Meeks v. Bergen,* 749 F.2d 322, 326 (6th Cir.1984) ("absent any indication from the Michigan Supreme Court that it was relying upon a procedural default ... the district court correctly determined that the state court did not rely upon the alleged procedural default.")

A later panel of this Court declined to follow *Meeks,* believing that the dicta in *Raper* should have controlled. *Gilbert v. Parke,* 763 F.2d 821, 824–25 (6th Cir.1985). Because the basis of the *Raper* standard, the Second Circuit's *Martinez* decision, cannot be applied to the silence of a state appellate court without considering the particular jurisdictional and procedural context

in which that court operates, I believe that *Meeks* correctly applies *Raper* and *Gilbert* does not. *See also Hockenbury v. Sowders,* 620 F.2d 111, 115 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981) (when state court arguably relies on *both* procedural and substantive grounds for denial of petitioner's claim, federal habeas court must determine whether failure to comply with contemporaneous objection rule was "a substantial basis" of the state court's denial.)

I, therefore, turn to the merits of this claim. In this Circuit, we have rejected a rule that would treat any comment as to the uncontradicted nature of evidence, when only the defendant could have provided the contrary evidence, as an automatic violation of *Griffin* requiring reversal, *Butler v. Rose,* 686 F.2d 1163 (6th Cir.1982) (*en banc*). Instead, we have required "a probing analysis of the context of the comment," *id.* at 1171, quoting *United States v. Robinson,* 651 F.2d 1188, 1197 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981), in order to determine "[w]hether the language used was manifestly intended to be and was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify," *Butler,* 686 F.2d at 1170. We have since made it clear that the determination of the constitutionality of an indirect comment on a defendant's refusal to testify, as was the case here, requires consideration of the following four factors:

(1) whether "the comments were 'manifestly intended' to reflect the accused's silence *or* of such a character" that they would "naturally and necessarily" be understood as such by the jury;

(2) whether the remarks were isolated or extensive;

(3) whether the evidence of guilt was otherwise overwhelming;

(4) whether curative instructions were given, and when. *See Spalla,* 788 F.2d at 404 (emphasis in original). *See generally Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979).

Although the *Spalla* court did not say so explicitly, it is apparent that the first of these factors is to determine whether any constitutional violation has occurred at all, while the last three are directed at the question of whether any such error is harmless beyond a reasonable doubt, an issue on which the prosecution bears the burden of proof, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also Eberhardt,* 605 F.2d at 279 (not enough for reviewing court to feel that the evidence is strong and that the defendant probably would have been convicted anyway).

The comment here came in the prosecutor's rebuttal of defense counsel's argument. Defense counsel argued that there was circumstantial evidence and other evidence which disputed the victim's testimony. He argued, for example, that there were no cuts on the defendant or blood or damage to his clothing from breaking and going through the storm window. He noted that the victim had only a cut on her toe from the broken glass; she had no bruises, no semen was found and no pubic hair. He noted that defendant was arrested the next morning sound asleep but did not have the driver's license on him. Also, although they took some of his clothing, they didn't take his blue jeans to be tested, nor did they take the victim's panties, and where are they? He also argued that Detective Hardin went out and took pictures of the defendant. Why did he do that if the victim had already identified defendant from pictures? When the prosecutor responded, he pointed out that the victim's testimony at the preliminary hearing matched her testimony at the trial. He noted the deputy sheriff's testimony that defendant had said he hadn't done it when he was arrested, not that no rape had occurred. There was also reference in the final argument to blackouts which a psychiatrist testified defendant had complained of. The defendant's statements to the psychiatrist could have disputed the victim's testimony; they apparently didn't.

Given the context in which they were made, the comments were neither manifestly intended to reflect the accused's silence nor would they "naturally and necessarily" be understood as such by the jury. It is equally plausible that the prosecution was

pointing out that the circumstantial evidence on which defendant's counsel had relied in this argument did not contradict the victim's testimony. The victim's earlier statements did not contradict it, defendant's statements at the time of the arrest did not, nor did his statements to the psychiatrist. *See United States v. Robinson,* 651 F.2d 1188 (6th Cir.1981).

Finally, I disagree with the majority that there was evidence of sexual abuse as distinct from rape. The evidence on which the majority relies indicates only the lack of injury or supports the conclusion that the assailant failed to ejaculate. It does not indicate the absence of any element of first degree rape. The victim testified that defendant had twice forced her to have sexual intercourse and that penetration occurred both times. To allow the jury to conclude that defendant had had forcible sexual contact with the victim but had not raped her would be to permit a verdict to be based on speculation. There is no basis for accepting the victim's testimony regarding the entire event and rejecting the testimony about penetration. The Kentucky trial court therefore did not violate federal constitutional law when it followed state law and refused defendant's requested instruction.