Reginald WILLIAMS, Petitioner,

v.

**STATE OF SOUTH CAROLINA and Attorney General of the State of South Carolina, T. Travis Medlock, Respondents.**

Civ. A. No. 3:89–372–15.

United States District Court,
D. South Carolina,
Columbia Division.

June 22, 1990.

Reginald Williams, pro se.

Donald J. Zelenka, Asst. Atty. Gen., Columbia, S.C., for respondents.

## ORDER

HAMILTON, District Judge.

Petitioner, proceeding pro se, has brought the present action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. The matter is currently before the court upon cross-motions for summary judgment. The court has concluded that respondents' motion for summary judgment should be granted. Rule 56, Fed.R.Civ.Proc.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02(b)(2)(C),

D.S.C., the matter was referred to Magistrate Henry M. Herlong, Jr., for a report and recommendation. That report and recommendation, as filed on April 11, 1990, and entered on April 12, 1990, is before the court at this time. In his report and recommendation, Magistrate Herlong recommended that respondents' motion for summary judgment be granted. Petitioner filed objections to the magistrate's report and recommendation on May 7, 1990.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court must make a de novo determination of those portions of the magistrate's report and recommendation to which the petitioner has objected. *Camby v. Davis,* 718 F.2d 198 (4th Cir.1983). Presently, petitioner has objected to the magistrate's report and recommendation in toto. After reviewing the record in this case, the magistrate's report and recommendation, the petitioner's objections thereto, and the applicable law, the court is constrained to conclude that petitioner's objections are meritless.

The petitioner was indicted for armed robbery at the August 1985 term of Court of General Sessions for Charleston County. On December 4, 1985, he was found guilty by the jury and sentenced to twenty-five (25) years imprisonment. The petitioner was represented in that proceeding by John T. Taylor, Esquire, and Albert T. Shahid, Esquire.[1]

Petitioner was convicted of armed robbery for allegedly robbing at gunpoint, along with an accomplice, a Quick Stop located in Charleston County, South Carolina. According to Penny L. Teaster (Teaster), the convenience store clerk working on the night of the alleged robbery, two men entered the store, selected a six-pack of beer, and then proceeded toward Teaster who was standing behind the checkout counter. Tr. 36. Critical to the State's case against the petitioner was Teaster's pretrial identification of petitioner from among thirty photographs assembled by the police, as well as her in-court identification of the petitioner. Tr. 37, 120.

---

1. The undisputed procedural history of petitioner's direct appeal and state post-conviction action is contained in respondents' Return and

Memorandum in Support of Motion for Summary Judgment, April 5, 1989, pp. 2–4.

During petitioner's trial, the State offered the testimony of Officer Jhone Hart (Hart), an evidence technician employed by the Charleston County Police Department. In response to the Assistant Solicitor's question as to the nature of her duties, Hart testified as follows:

I am an evidence technician. I maintain all the evidence that comes into the department. I process major crime scenes. Part of my other duties would be to pull photo lineups. We maintain the mug shot files. I also do composites.

Tr. 100. Later in her testimony, Hart testified that Teaster was only able to positively identify one photograph out of a compilation of thirty photographs of individuals with similar physical characteristics, that of the petitioner as the perpetrator of the robbery. A photo pack containing these thirty photographs was admitted into evidence by the trial court as the State's Exhibit 17. Tr. 120.

Hart was later recalled to the stand, tr. 124, and, in response to questions by the Assistant Solicitor, explained the procedure used to develop photographic lineups. The following colloquy ensued:

Q. Is there some sort of procedure that you go through when you develop photographic lineups?

A. When an investigator comes to us with a suspect, we will pull the photo of that suspect or the detective may already have that photograph. We go into the files and look for photographs that match as closely as possible the physical characteristics of the suspect in question.

Q. How many photographs did you go through in trying to locate the five additional photographs that you used to compile that photographic lineup?

A. I didn't make notes on it. We don't. We pull too many lineups to make specific notes. But indicated by the mug numbers that are present, I went through at least 300 photographs in order to pull that one out.

Q. When you say indicated from the numbers, are those the numbers indicated on State's Exhibit No. 20 marked for identification purposes only?

A. It is the mug numbers that are listed to the right of each name.

Tr. 125. It should be noted that mug numbers were referenced on State's Exhibit 20, which was *not* admitted into evidence. Rather, State's Exhibit 17 was admitted into evidence, which apparently did not reference any mug numbers. Also, Hart's testimony makes it clear that only the additional "photographs that match as closely as possible the physical characteristics of the suspect in question" were "used to compile the photographic lineup." Tr. 125. Hart did not attribute the police mug shot files, however, as the source for petitioner's photograph. After Hart concluded her testimony, and the State rested its case, petitioner's trial counsel moved for a mistrial on grounds Hart had "referred to mug numbers as being along beside the names of the persons on the list she was examining, by implication along beside the [petitioner's] name ... as well." Tr. 126.

Petitioner contends that Hart's apparently inadvertent reference to the term "mug numbers" during his trial had the effect of placing his character in issue in violation of the due process clause of the fourteenth amendment. Asserting that his attorneys made numerous errors at trial, petitioner also contends that counsel were constitutionally ineffective.

Respondents argue initially, however, that petitioner did not object to the "mug numbers" testimony at trial, and thus has failed to establish sufficient cause and prejudice for his procedural default under State law. Respondents alternatively submit that, in the context of the entire record, it was not error for the trial court to admit the challenged testimony and deny petitioner's motion for a mistrial. Respondents also contend that the factual record developed in petitioner's state post-conviction relief proceeding, which this court is ordinarily constrained to accept under 28 U.S.C. § 2254(d), reveals that his ineffective assistance claim is meritless.

The magistrate concluded that both of petitioner's allegations were nonmeritorious. To be entitled to relief on the "mug numbers" allegation, the magistrate deter-

mined petitioner must show that the trial court's denial of his motion for a mistrial rendered his trial fundamentally unfair, or, alternatively, that any resulting unfairness was not harmless error. The magistrate concluded that only slight prejudice resulted from Hart's reference to "mug numbers," and that the admission of the photographs themselves was proper.[2] Addressing petitioner's ineffective assistance allegations, the magistrate found petitioner had failed to show that his attorneys' conduct fell below an objective standard of reasonableness.[3]

The Supreme Court has held that failure to object at trial to an alleged error as required by a state contemporaneous objection rule forecloses federal habeas corpus review of the alleged error "absent a showing of cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). The doctrine of procedural default, of course, arises from the well-settled recognition "that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forego the exercise of its habeas corpus power." *Francis v. Henderson*, 425 U.S. 536, 539, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976). The Court has indicated, however, that "a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)).

Under South Carolina's contemporaneous objection rule, an objection is waived unless made contemporaneously to the objectionable testimony. *State v. Lynn*, 277 S.C. 222, 284 S.E.2d 786, 789 (1981); *State v. Atchison*, 268 S.C. 588, 235 S.E.2d 294, 298–99, *cert. denied*, 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed.2d 181 (1977). In *Lynn* the State Supreme Court concluded that any objection was deemed waived where the defendant failed to contemporaneously object to allegedly prejudicial testimony proffered by State witnesses. 284 S.E.2d at 789. Particularly relevant to the instant action, the court concluded that the failure to contemporaneously object could not later be "bootstrapped by a motion for a mistrial." *Id. See also Atchison*, 235 S.E.2d at 298–99. Because the present petitioner did not make a contemporaneous objection to Hart's inadvertent use of the term "mug numbers," but rather merely made a motion for a mistrial after Hart stepped down from the witness stand and the State rested its case, it is clear that petitioner defaulted under State law.

Nonetheless, on direct appeal from his conviction, the South Carolina Supreme Court merely affirmed the conviction and sentence pursuant to Supreme Court Rule 23. *State v. Williams*, Memo. Op. No. 87–MO–143 (March 23, 1987). The court cited six previous judicial decisions as support for its summary determination. Three of these decisions, *State v. Rabon*, 275 S.C. 459, 272 S.E.2d 634 (1980), *Lynn, supra*, and *Atchison, supra*, provide that South Carolina's contemporaneous objection rule bars review of the merits under circumstances analogous to the present case. The other three decisions cited by the court contain legal standards relevant to the merits of petitioner's question on direct re-

---

2. It is unclear whether the magistrate premised his ruling, as to petitioner's first allegation, on petitioner's alleged default or on the merits. Although apparently finding that petitioner's request for a mistrial was based on Hart's reference to "mug numbers" and thus satisfying South Carolina's contemporaneous objection rule, Magistrate's Report and Recommendation, p. 3, the magistrate proceeded to evaluate petitioner's first allegation on the merits. Ultimate-

ly, however, the magistrate concluded that petitioner's first allegation was "procedurally bypassed" on the final page of his report and recommendation.

3. Because petitioner has merely restated his original allegations in his objections to the magistrate's report and recommendation, the court will conduct a de novo review of his allegations.

view.[4] Specifically, *State v. Carrigan*, 284 S.C. 610, 328 S.E.2d 119 (1985) and *Wilson v. State*, 276 S.C. 609, 281 S.E.2d 128 (1981) provide the standard of review for the grant or denial of a motion for a mistrial by the trial court, and *State v. Thompson*, 278 S.C. 1, 292 S.E.2d 581 (1982), which upheld the admission of evidence relevant to a purpose other than attacking character even though it incidentally reflected on the defendant's character.

Although certainly not a model in clarity, it would require willful indifference to logical judicial decision-making principles to conclude that the court's summary disposition was ambiguous. Put simply, because three cases which unmistakably mandate default under these circumstances were cited by the court, it is clear that the court made two completely alternative and independent holdings. First, petitioner's claim was procedurally barred from appellate review under South Carolina's contemporaneous objection rule. And second, petitioner's claim fails on the merits under State law. In other words, the court concluded it was a "clear-cut" case on two completely alternative and independent State grounds of decision.

According to the *Harris* Court, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," before *Sykes* would preclude federal review. 109 S.Ct. at 1042. In *Harris* the state court made only ambiguous references to the applicable state procedural bar, while purporting to rely on federal law in rejecting petitioner's ineffectiveness claim on the merits. In *Roller v. McKellar*, 711 F.Supp. 272 (D.S.C.), *appeal dismissed without opinion*, 891 F.2d 287 (4th Cir.1989), this court concluded that petitioner's claims were not

barred from review where the State Supreme Court, in its Rule 23 memorandum opinion, failed to cite any authorities for its summary disposition of the appeal.[5]

Application of the *Harris* principle reveals that petitioner's default under State law should bar review of his first allegation on the merits. First, as already stated, the State Supreme Court cited three cases which applied South Carolina's contemporaneous objection rule to circumstances analogous to petitioner's attempt to bootstrap his failure to object onto a motion for a mistrial. Thus, South Carolina's contemporaneous objection rule was applied as an *independent* ground which precluded review of petitioner's allegation on the merits. *See Harris*, 109 S.Ct. at 1042. Second, unlike *Roller*, where the State Supreme Court failed to cite any authority for its summary affirmance, in the present case the court cited authorities revealing, as already stated, two completely alternative holdings: First, that petitioner defaulted under State law; and second, that petitioner's substantive claim was meritless.

Perhaps most important, an unrestrained reading of *Harris* would largely eviscerate the considerations of comity which underlie the Great Writ. *Wainwright v. Sykes*, 433 U.S. at 88–89, 97 S.Ct. at 2507–08; *Preiser v. Rodriguez*, 411 U.S. 475, 488–92, 93 S.Ct. 1827, 1835–38, 36 L.Ed.2d 439 (1973). Although considerations of comity should largely be applied uniformly throughout the federal system, it cannot be overlooked that a very substantial number of criminal appeals in South Carolina result in the State Supreme Court issuing Rule 23 summary dispositions in clear-cut cases, much like the United States Supreme Court denies certiorari where the result is clear from prior precedent. Accordingly, to af-

---

**4.** Petitioner raised the following question on direct appeal:

Whether the lower court erred and denied Appellant due process of law when it refused Appellant's Motion for a Mistrial after State's witness, Jhone Hart, referred to the police identification numbers on the "mugshots" of Appellant which were in evidence because witness Hart's testimony had the effect of placing Appellant's character in issue at trial

by implying that he had a prior criminal record, in violation of Appellant's right to a fair trial by an impartial jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 14, of the South Carolina Constitution.

**5.** There, the State Supreme Court's opinion read in its entirety: "Per curiam: Affirmed under Rule 23."

ford Rule 23 opinions which specify a procedural bar no deference would be inconsistent with universally recognized principles of federalism and comity toward state courts. *See Wainwright v. Sykes,* 433 U.S. at 88, 97 S.Ct. at 2507 (contemporaneous objection rule deserves respect for, among other things, it is employed by a coordinate jurisdiction within the federal system); *Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (costs of federal habeas review are high, "which include a reduction in the finality of litigation and the frustration of 'both the State's sovereign power to punish offenders and their good-faith attempts to honor constitutional rights'...."). Finally, a distinction exists between according respect to a default allegedly premised upon *no* cited precedent, the situation which this court faced in *Roller,* and the present case, where the State Supreme Court cited precedent clearly and expressly indicating that petitioner defaulted under State law.

In addition to the substantial theoretical grounds underlying habeas jurisdiction which urge deference to a co-equal judicial department under our federal system, the practical aspects of addressing the merits of every claim arising out of state criminal convictions affirmed by South Carolina Supreme Court Rule 23 cannot be *wholly* ignored. Of course, trying to discern the clear meaning of a Rule 23 opinion varies depending upon the information provided by the State Supreme Court in its opinion. Where the State Supreme Court fails to cite any authority to support its decision, as in *Roller,* it is clear that a federal habeas court should proceed to address the merits of the claim. *Harris,* 109 S.Ct. at 1043 (last state court rendering decision must clearly and expressly state its decision rests on state procedural ground). Nonetheless, where, as here, the South Carolina Supreme Court has clearly and expressly relied upon cases which preclude review of

the merits under State law, this should suffice to preclude federal habeas review as well. *Cf. Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982) ("Issuance of a habeas writ ... extracts an extra charge by undercutting the State's ability to enforce its procedural rules....").

This court's conclusion is buttressed by reference to the very doctrine which gave rise to *Harris:* That federal jurisdiction does not exist where the underlying state court decision rests on an adequate and independent state ground. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), cited in *Harris,* 109 S.Ct. at 1043. Specifically, in both *Harris* and *Long* the Court was unable to ascertain whether the state court had grounded its decision on a state procedural bar or a principle of *federal constitutional law.* Thus, it was unable to determine whether the decision rested on an adequate and independent *state* ground of decision. In the present case, however, it is clear that the State Supreme Court did not rely upon federal law at all in its decision. Hence, unlike *Harris* and *Long,* presently there is no federal interest in correcting an erroneous interpretation of federal constitutional law.[6] *See Long,* 463 U.S. at 1040, 103 S.Ct. at 3476 (uniformity in federal law "goes unsatisfied when we fail to review an opinion that rests primarily upon federal grounds...."). Significantly, addressing the merits of defaulted claims where, as here, the State Supreme Court has relied upon a state procedural bar as an independent ground of decision (and has not relied upon federal law in the alternative), burdens the federal docket without any corresponding benefit or vindication of federal interest. Accordingly, the court is constrained to conclude that it has no authority to address the merits of petitioner's first allegation because of his default under State law.[7]

---

6. At a minimum, considerations of comity require deference to state court methods of judicial administration (here the Rule 23 method of disposing of clearly frivolous appeals) in the absence of any strong federal interest.

7. At the time *Roller v. McKellar, supra,* was decided, this court consulted with the State Supreme Court and informed them of the potential incongruity between use of Rule 23 memorandum opinions and the *Harris* decision, at least where the Rule 23 opinion contains no

**1206**

 Assuming, without deciding, that petitioner has demonstrated sufficient cause and prejudice for his procedural default under State law, which is unlikely,[8] it is nonetheless universally recognized that federal habeas corpus is limited to redressing violations of federal constitutional or statutory law. 28 U.S.C. § 2254(a). As a corollary to this bedrock principle of federalism, absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," the admissibility of evidence does not present a federal constitutional question. *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960). *See also Chance v. Garrison,* 537 F.2d 1212 (4th Cir.1976); *Holder v. Slayton,* 347 F.Supp. 1303 (W.D.Va.1972). To prevail on his claim, therefore, petitioner must demonstrate that the trial court's refusal to declare a mistrial based upon Hart's reference to the term "mug numbers" in front of the jury resulted in a trial so fundamentally unfair as to deny the petitioner due process of law. *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). Indeed, "not every trial error or infirmity which might on direct appeal call for application of our supervisory powers correspondingly constitutes a denial of due process necessary to support granting habeas corpus relief." *Passman v. Blackburn,* 652 F.2d 559, 567 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982). *See Donnelly,* 416 U.S. at 642, 94 S.Ct. at 1871.

Application of fundamental fairness principles have led courts to uniformly reject "mug shot" claims analogous to the present facts and circumstances. *See, e.g., Bagby v. Sowders,* 853 F.2d 1340 (6th Cir. 1988); *Harris v. Wyrick,* 634 F.2d 1152 (8th Cir.1980), *cert. denied,* 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981). In *Bagby* the court sustained an objection to the victim's use of the term "mug book." Although the prosecutor did not object to a curative instruction, the Sixth Circuit noted that the record did not reveal whether one was actually given by the state trial court. Apparently, the prosecutor returned to the same line of questioning, but referred to the photographs as "pictures" rather than specifically as a mug book. Nonetheless, the court was "unconvinced that the victim's brief reference to a mug book, an objection to which was sustained, rendered petitioner's trial fundamentally unfair and violated due process." 853 F.2d at 1346.

Likewise, the *Harris* court concluded that limited references to police photographs and mugshots were not sufficiently prejudicial so as to be considered fundamentally unfair. In that case, the prosecutor and the victim, at different points during the trial, made reference to the term "mugshots." Nonetheless, defense counsel declined the trial court's offer of a curative instruction, and instead moved for a mistrial based on the alleged cumulative prejudicial effect. The court concluded that "[t]he limited references in the record to police photographs and mugshots, unaccompanied by anything suggesting previous criminal activities, do not appear sufficiently prejudicial so as to be considered fundamentally unfair...." 634 F.2d at

authority for the decision. As an accommodation, the court was informed that citations would be appended to future Rule 23 decisions, as was done in the present case. Clearly considerations of comity are fostered through voluntary modification of a sovereign's process to adapt to new pronouncements of federal habeas corpus law. Comity between the federal and state courts would not be fostered, however, by forcing a co-equal judicial department to either wholly change a fundamental rule of court or, alternatively, have its procedural bar afforded no respect in the federal court system. *Cf. Henry v. Mississippi,* 379 U.S. 443, 453, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1964) ("Court is not

blind to the fact that the federal habeas corpus jurisdiction has been a source of irritation between the federal and state judiciaries....").

**8.** Petitioner does not allege that counsels' failure to contemporaneously object to Hart's testimony establishes cause for his procedural default. Nonetheless, attorney error resulting from inadvertence or mistake, which falls short of ineffective assistance, does not establish cause for a procedural default. *Murray v. Carrier,* 477 U.S. at 478, 106 S.Ct. at 2639; *Wainwright v. Sykes,* 433 U.S. at 87–91, 97 S.Ct. at 2506–09. In any event, the court has concluded that petitioner's trial counsel were not constitutionally ineffective. *See infra* p. 1208.

1153. Accordingly, the court affirmed dismissal of the action.

■ In the present action, Hart's "mug shot" or "mug number" references must first be placed in their proper context. Initially, Hart explained that she "maintain[ed] the mug shot files" incidental to her employment as a laboratory technician with the Charleston County Police Department. Tr. 100. When later recalled to the stand, Hart explained the process used to gather photographs of individuals with similar physical characteristics for use in a photographic lineup, and explained that she went through at least 300 file photographs to get five photographs of persons with physical characteristics similar to the petitioner. Tr. 125.

Significantly, however, Hart did not state that the police mug shot files were the source of petitioner's photograph. Rather, she merely indicated where the photographs placed alongside petitioner's photograph were obtained for purposes of the photographic lineup. Thus, her reference to mug numbers on State's Exhibit 20, which was not introduced into evidence, was arguably not even directed toward the petitioner. Perhaps even more important, defense counsel did not object to Hart's testimony, and apparently, as in *Harris*, did not accept the court's offer of a curative instruction. Tr. 126–27. Accordingly, like *Harris* and *Bagby*, the brief, limited references to "mug shot" and "mug number" by Hart did not render petitioner's trial fundamentally unfair in violation of the due process clause of the fourteenth amendment.

■ Petitioner's second allegation, that his trial counsel were constitutionally ineffective, merits little consideration. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner must show that counsels' performance fell outside the "wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2065, and "that the deficient performance prejudiced the defense" to an extent "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064.

*See Roach v. Martin*, 757 F.2d 1463, 1476–77 (4th Cir.1985). Finally, petitioner must overcome a strong presumption that his attorneys' actions were within the permissible range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Smith v. State of South Carolina*, 882 F.2d 895, 898 (4th Cir.1989), *cert. denied*, ―― U.S. ――, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990). Although the question of whether counsel were constitutionally ineffective must be reviewed de novo, the presumption of correctness afforded State court factual findings generally applies to all facts underlying the ultimate ineffectiveness determination. 28 U.S.C. § 2254(d).

■ Specifically, petitioner alleges his trial counsel were ineffective for the following reasons:

(1) failure to introduce time cards which showed petitioner worked the day before and the day after the alleged robbery;

(2) failure to have the petitioner testify on his own behalf;

(3) failure to call an available alibi witness; and

(4) failure to object to the trial judge's comment, made outside the presence of the jury, that "this fellow [the petitioner] has got to comply with the law of not robbing people."

Petitioner first alleges counsel were ineffective for failure to introduce certain time cards which showed that petitioner worked the day before, and the day after, the alleged robbery. The testimony of petitioner's trial counsel during the State post-conviction relief proceedings reveals that both attorneys believed the time card evidence was not a real alibi for the petitioner. Although one of petitioner's attorneys, John Taylor, Esquire, testified that the time cards were not initially introduced because of inadvertence, he also testified that counsel made a strategic decision not to recall a witness and introduce the time cards because of fear they did not provide a real alibi, and thus could be exploited by the Assistant Solicitor on cross-examination. Tr. 241–42. The State post-conviction relief

court determined that counsel did not recall the witness to introduce the time cards based upon their intuition and judgment that this step may have proved detrimental to their client, the present petitioner. Tr. 278. This strategic decision made by counsel was not objectively unreasonable, especially when "viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Accordingly, this allegation lacks merit.

Second, petitioner alleges counsel were constitutionally ineffective for failure to call him as a witness. Nonetheless, counsels' decision not to call the petitioner to testify on his own behalf is well supported in light of their belief that petitioner's previous convictions for forgery and credit card fraud, deemed admissible by the trial court on cross-examination in the event petitioner testified, would adversely affect the petitioner's credibility. Tr. 240, 251.

Petitioner's third and fourth factual allegations are likewise nonmeritorious. The State factual record reveals neither attorney even remembered being told that petitioner's brother could provide an alibi. Tr. 252, 254–57. The State court found that "counsel questioned [petitioner] closely concerning all possible alibi witnesses and was never presented with the information that Lavel Hazel [petitioner's alleged alibi witness] could provide an alibi. . . ." Tr. 279. This contention must fail based upon the State court's adverse factual determination.

Finally, petitioner contends that the above referenced comment of the trial judge bolstered the primary witness' belief as to his guilt. The record discloses, however, that the trial judge's improvident comment was made outside the presence of the jury and could not have influenced the testimony of the State's primary witness, Teaster, because her direct examination was completed at the time of the trial judge's comment, and, in any event, because her identification testimony on cross-examination and re-direct examination was *unchanged* from her direct examination. Petitioner's fourth allegation thus also lacks merit. Accordingly, it is clear that petitioner's ineffective assistance allegations are wholly without merit.

Based on the foregoing reasoning and cited authorities, the court is constrained to grant respondents' motion for summary judgment. Petitioner's motion for summary judgment is denied. Rule 56, Fed.R.Civ. Proc.

IT IS SO ORDERED.