**Frank Durant JEFFERS, Petitioner-Appellee,**

v.

**William D. LEEKE; T. Travis Medlock, Attorney General of South Carolina, Respondents-Appellants.**

No. 87–7112.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1987.

Decided Dec. 15, 1987.

Rehearing and Rehearing En Banc Denied Jan. 20, 1988.

Donald J. Zelenka, Chief Deputy Atty. Gen. (T. Travis Medlock, Atty. Gen., William A. Ready, III, Asst. Atty. Gen., Columbia, S.C., on brief), for appellants.

James B. Richardson, Jr., Columbia, S.C., for appellee.

Before SPROUSE and WILKINS, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINS, Circuit Judge:

The State of South Carolina appeals from the issuance of a writ of habeas corpus for state inmate Frank Jeffers on the ground of ineffective assistance of counsel at trial. We reverse and remand with directions to dismiss the petition.

### I.

On March 8, 1981 Petitioner Frank Jeffers shot and killed his wife Tammie during a family quarrel at the home of her parents with whom they lived. Testimony at trial showed that on the day of the shooting, Petitioner and Tammie attended a party where he smoked marijuana and became intoxicated. After returning home, Petitioner went to their bedroom and turned on the stereo. His father-in-law told Tammie to tell Petitioner to turn down the volume or he would "bust it." Three witnesses testified that after Tammie entered the bedroom, she screamed "No, Frankie, no, don't do it." Immediately thereafter they heard a single gunshot and ran to the room where Tammie was found lying on the floor bleeding. The father-in-law testified that Petitioner was still holding the gun when he entered the room. The mother-in-law and sister-in-law testified that Petitioner ran from the room screaming that he "didn't mean to do it." Tammie died at a hospital several hours later.

Petitioner admitted that he shot his wife, but contended that it was an accident. He testified that when he heard his father-in-law threaten to "bust" his stereo, he took a shotgun from the closet, loaded it, and placed it on the bed. When Tammie entered the bedroom, he picked up the gun and cocked it. Petitioner further testified that Tammie screamed in response to a sudden movement he made while holding the gun. He claimed that he then attempted to breech the gun, but it fell to the bed and discharged accidentally.

The gun in question was a single barrel, .12 gauge, breech-loading shotgun. A firearms expert testified that the gun was a very safe weapon and that it was in normal operating condition. He stated that the gun would not breech if cocked. The expert further testified that from examination of the discharged shell, the gun had been completely cocked when fired at Tammie.

Petitioner maintained that he and Tammie were happily married. However, testimony was offered that they had argued at

the party about his drinking. Petitioner denied arguing with her and several family members present at the party testified that they had heard no argument.

There was additional testimony that after initially running from the scene, Petitioner returned and fought with his father-in-law in an attempt to reenter the house. After the fight, he again ran from the scene, flagged down a responding ambulance and directed it to the house.

After Petitioner was arrested at the scene and twice advised of his rights, he told two officers that he did not intend to shoot his wife and asked them to kill him. The officers also testified that he was upset and virtually incoherent at that time. While he was being transported to the hospital for treatment of injuries sustained during the fight with his father-in-law, he told another officer that the shooting was an accident, despite a reminder that he had been read his rights. After he was taken to the local law enforcement center and again advised of his rights, he requested an attorney.

During the trial, two responses by a state witness referred to Petitioner's post-arrest silence at the law enforcement center and request for counsel, without objection from defense counsel. The first response occurred during direct examination of the investigating officer:

Q: Did you have occasion to see [Petitioner] after he got back to the jail?
A: Yes, sir. It's normal procedure after a person has been booked in, if it's a case I've been assigned to, I get the person and bring 'em back down to my office and talk to em. I talked to him; I advised him of his rights; and he refused to talk to me and requested an attorney be present.

The second comment was made by the same investigating officer on recross-examination:

Q: Did you ask him where he was going when he was wandering four blocks away?
A: When I talked to Frankie he indicated that he wanted an attorney.

Also, during closing argument the solicitor stated:

Then they took him back to the sheriff's department, booked 'im and when they tried to talk to 'im, what did Frank say? I want a lawyer. This is a man who was so distraught over his wife, who was incoherent with grief, out of his mind with misery, and he wants a lawyer right away. Was he so out of his mind that he doesn't know to ask for an attorney. He knows he's in trouble. Big trouble. He's sharp enough to ask for an attorney.

The jury found Petitioner guilty of murder and he was sentenced to life imprisonment. His conviction was affirmed on appeal to the South Carolina Supreme Court under Rule 23 of the Rules of Practice of that court. *State v. Jeffers*, Memo. Op. No. 83–MO–111 (May 20, 1983).

Petitioner filed an application for post-conviction relief in state court in August 1983, alleging ineffective assistance of counsel arising from defense counsel's failure to object to the three comments on his post-arrest silence and request for counsel. At an evidentiary hearing, defense counsel testified that his failure to object was a general tactical decision to make very few objections so that the trial would "go as smoothly as possible," believing that under the facts of the case this would be in his client's best interests. The state circuit court denied relief and dismissed the application, finding that defense counsel's tactical decision not to object was harmless beyond a reasonable doubt. A petition for a writ of certiorari was denied by the state supreme court in August 1985.

Petitioner then filed a petition for a writ of habeas corpus in federal court under 28 U.S.C.A. § 2254 (West 1977). The magistrate to whom the case was initially assigned recommended that the petition be denied, finding that the failure to object was a tactical decision and that the evidence did not undermine confidence in the outcome of the trial. The district court rejected the recommendation and issued the writ, finding that Petitioner had been denied effective assistance of counsel.

## II.

The sixth amendment guarantees the right to effective assistance of counsel.

*Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. In *Strickland,* the Court established a two-prong test for determining whether assistance of counsel was so defective as to require reversal of a conviction. First, the defendant must establish that counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687–88, 104 S.Ct. at 2064–65. Second, he must establish that the deficient performance prejudiced the defense to the extent that he was deprived of a fair trial. *Id.* at 687, 104 S.Ct. at 2064.

### A.

In asserting a claim of deficient performance, the defendant must identify the acts or omissions of counsel which he alleges were not the result of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066. The court must determine, in light of all the circumstances, whether the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Judicial scrutiny of counsel's performance is highly deferential and indulges a strong presumption that counsel rendered adequate assistance. *Id.* at 689, 104 S.Ct. at 2065. The defendant must rebut the presumption that the challenged action was sound trial strategy under the circumstances. *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

▮ Petitioner asserts that his defense counsel's performance was deficient in failing to object to the comments on his post-arrest silence and request for counsel which were improper under *Doyle v. Ohio,*

426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle,* the Court held that use of a defendant's silence after being advised of his rights for impeachment purposes is a violation of due process. *Id.* at 619, 96 S.Ct. at 2245. While we seriously question the soundness of defense counsel's tactical decision not to object,[1] we need not address the question of whether his performance was deficient, for we conclude that Petitioner has not established prejudice. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Whitley v. Bair,* 802 F.2d 1487, 1494 (4th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987).

### B.

To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Considering the totality of the evidence before the jury, we find that there is not "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068. While Petitioner may not have been afforded a perfect trial, he was given a fair trial, free of prejudicial error. *See United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

No special attention was directed to the two testimonial comments on Petitioner's post-arrest silence and request for counsel at the time they were made. The comment on recross-examination of the investigating officer was immediately clarified by testimony that Petitioner only requested counsel "after awhile, but at first when [the officer] talked to him, he was just upset." The subject was not mentioned during cross-examination of Petitioner. During closing argument, the prosecutor argued that Petitioner's silence and request for counsel were inconsistent with his assertions of having been distraught and incoherent with grief over the shooting. Any potentially negative impact from these

---

**1.** Counsel for Petitioner on this appeal did not     represent him at trial.

comments was diminished by extensive evidence that from the moment it occurred, Petitioner did appear to be upset and was persistent in his claim that the shooting was an accident. His numerous statements to law enforcement personnel and others immediately after the shooting were wholly consistent with his testimony at trial. We find no reasonable probability that but for the comments, the jury would have had a reasonable doubt as to his guilt.

In *Doyle*, the petitioners were arrested for selling marijuana to a local drug informant. They admitted virtually everything about the state's case, but for the first time at trial, asserted that they were framed, claiming that they were making a purchase from the informant. On cross-examination of the petitioners, the state sought to impeach their testimony by asking why they had not made this claim to the law enforcement agent at the time they were arrested.

One of the reasons the Court found a violation of fundamental fairness in *Doyle* was that petitioners' post-arrest, pretrial silence could have indicated either that they were exercising their right to remain silent or that the defense was a recent fabrication. *Doyle*, 426 U.S. at 616–17, 96 S.Ct. at 2243–44; *see also Williams v. Zahradnick*, 632 F.2d 353, 360 (4th Cir.1980). However, here, the comments could not have reasonably "plant[ed] in the mind of the jury the dark suspicion that the defendant had something to hide, and that any [defense] which [was] subsequently proffered [was] pure fabrication," *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir.1983), *cert. denied*, 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984), in view of Petitioner's continuous and consistent assertions of an accident defense.

We also find any error was harmless under the five-prong test established in *Williams v. Zahradnick*, 632 F.2d at 361–62, for determining the prejudicial effect of a *Doyle* error. Although the prosecution improperly elicited and made comments on Petitioner's post-arrest silence and request for counsel to counter his claim of accident and no curative instructions were given due to the absence of objection, the three references were harmless in view of the extensive testimony that from the time of the shooting continuing through trial he consistently asserted the defense of accident. They were also harmless in view of the quantum of other evidence indicative of his intent.

REVERSED AND REMANDED.