**Gary Lee ROLLER, Petitioner,**

v.

**Ken McKELLAR, Warden SCDC, CCI, and Travis Medlock, Attorney General of South Carolina, Respondents.**

Civ. A. No. 3:88–288–15J.

United States District Court,
D. South Carolina,
Columbia Division.

April 18, 1989.

Gary Lee Roller, pro se.

T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Salley W. Elliott, Asst. Atty. Gen., Columbia, S.C., for respondents.

## ORDER

HAMILTON, District Judge.

Petitioner, a state prisoner proceeding *pro se*, has filed the present action seeking federal habeas corpus relief, 28 U.S.C. § 2254. The matter is presently before the court on the respondents' motion for summary judgment and petitioner's motion for partial summary judgment. Rule 56, Fed. R.Civ.Proc.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.00, D.S.C., this matter was referred to United States Magistrate Robert S. Carr for a report and recommendation. Magistrate Carr found that petitioner's allegations were without merit and recommended that this court grant respondents' motion for summary judgment. Petitioner filed timely objections to the magistrate's report and recommendation. After reviewing the magistrate's report and recommendation, the petitioner's objections, the record, and the applicable law, the court agrees with the magistrate that respondents are entitled to summary judgment on all claims. Rule 56, Fed.R.Civ. Proc.

### Procedural History

Petitioner, Gary Lee Roller, was indicted at the January, 1983 term of the Court of General Sessions for Chester County for murder and grand larceny of a motor vehicle. When he was arrested by law enforcement officers, petitioner was naked and covered with blood on a freezing cold night. He admitted to shooting the victim, a truck driver, twice in the head with a pistol, but contended at trial that he did so defending himself from a homosexual attack. Petitioner was driving the victim's tractor trailer truck when apprehended.

After a trial by jury on March 21–24, 1983, he was found guilty of voluntary manslaughter and grand larceny. The Honorable George F. Coleman sentenced him to thirty (30) years imprisonment for manslaughter and five (5) years for grand larceny, his sentences to run consecutively. Petitioner filed a timely notice of intent to appeal with the South Carolina Supreme Court. The Supreme Court affirmed the judgment of the lower court pursuant to its Rule 23. *State v. Roller*, Memo.Op. No. 84–MO–143 (S.C.Sup.Ct. July 5, 1984).

Thereafter, petitioner applied for state post-conviction relief (PCR). A hearing was held on September 27, 1985, at which time the petitioner was present in court and represented by his court appointed at-

torney, Milton Hamilton, Esquire. During the hearing, petitioner testified in his own behalf. Tyre D. Lee, Esquire, petitioner's trial attorney, also testified. After taking the matter under advisement, the Honorable Edward B. Cottingham issued an Order on October 24, 1985, dismissing petitioner's application for PCR. Petitioner filed a timely petition for a writ of certiorari with the South Carolina Supreme Court, but that court denied his petition on July 10, 1986.

On February 2, 1988, petitioner filed his application for federal habeas corpus relief, in which he alleges that he is being held in custody unlawfully because: (1) the trial record contains insufficient evidence to support his conviction for grand larceny; (2) the trial court erred in admitting numerous bloody, gruesome photographs of the victim, whose prejudicial effect far outweighed their probative value; (3) petitioner's inculpatory statements to law enforcement officers were "involuntary" and, therefore, inadmissible; and (4) trial counsel was ineffective in a number of respects.

### Discussion

The court notes that petitioner has failed to exhaust his state remedies with regard to most of the issues that he raises in his ineffective assistance of counsel claim. *See infra* p. 281. But because respondents have stipulated that petitioner has no available state remedies left to pursue, Respondents' Brief at 6–7, they have waived their right to object to the habeas corpus petition on that ground. *Praylow v. Martin*, 761 F.2d 179, 182 n. 2 (4th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985); *see also Sweezy v. Garrison*, 694 F.2d 331 (4th Cir.1982) *cert. denied*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983). Therefore, it is appropriate for this court to consider petitioner's application on its merits.

In his first ground for habeas corpus relief, petitioner alleges that the record lacks sufficient evidence to support his conviction for grand larceny, and, therefore, the trial court erred in denying his motion for a directed verdict on that charge. Petitioner points out that, under South Carolina law, the offense of grand larceny requires the theft of goods valued at Two Hundred ($200.00) Dollars or more. S.C.Code Ann. §§ 16–1–10 and 16–13–30 (Law.Co-op.1985). He alleges that the record lacks any evidence that the item he stole, an operational tractor trailer truck, had a value in excess of Two Hundred ($200.00) Dollars. Since the record lacks any evidence on an essential element of the offense of grand larceny, petitioner contends that the trial court should have directed a verdict in his favor on that charge. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that sufficiency of evidence is a federal constitutional claim).

Respondents do not dispute that the record in this case lacks testimony that the tractor trailer truck stolen by petitioner had a value in excess of Two Hundred ($200.00) Dollars. They point out, however, that petitioner's trial counsel failed to move for a directed verdict on the ground that the record lacked evidence of value.[1]

---

1. At PCR, trial counsel testified that his motion for a directed verdict at the close of the State's case was meant to include both the murder and the grand larceny charges. Tr. at 542. After carefully examining the record, however, this court concludes that trial counsel failed to move for a directed verdict on the grand larceny charge.

Petitioner's directed verdict motion reads as follows:

Your Honor, at this time I would the ask the court to direct a verdict in this case based on the fact that the evidence taken in the light most favorable to the state has failed to prove prima facie case, basis being that there has been no showing by the state that the element of murder is present. There has been no showing of malice and we would feel that the state's case being circumstantial, there is not enough evidence to put the matter to the jury on this particular case and we would make our motion for directed verdict based on those grounds.

Tr. at 303. Thereafter, the State responded specifically to the evidence adduced at trial regarding the charge of murder. When requested to reply, trial counsel merely stated that "We would just make our motion for directed verdict." Tr. at 304. In making the motion for a directed verdict, trial counsel never mentioned the grand larceny charge, nor did he phrase the motion in such a way that the trial judge or the State would have been on notice that he was

Under South Carolina's contemporaneous-objection rule, matters not presented to or passed upon by the trial judge are procedurally defaulted. *See, e.g., State v. Newton,* 274 S.C. 287, 262 S.E.2d 906 (1980); *State v. Jordan,* 255 S.C. 86, 93, 177 S.E.2d 464, 468 (1970). Respondents contend, therefore, that petitioner cannot pursue this claim in federal court absent a showing of cause and prejudice under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (holding that a federal habeas petitioner who has failed to comply with a state's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim).

Petitioner raised this identical issue on direct appeal, and the South Carolina Supreme Court affirmed his conviction pursuant to its Rule 23[2] without indicating whether it dismissed this particular claim on the merits or on procedural grounds.[3] If the South Carolina Supreme Court had relied expressly upon the State's contemporaneous-objection rule in dismissing this claim, federal habeas review clearly would be barred under *Sykes* and its progeny unless petitioner could demonstrate cause and prejudice. Conversely, if the State Supreme Court dismissed this claim on the merits, without alternatively relying on the State's contemporaneous-objection rule,

then it would have implicitly excused petitioner's procedural default, and there would be no basis for this court to refuse to consider the merits of this claim. *Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 1044 n. 12, 103 L.Ed.2d 308 (1989) (citing *Ulster County Court v. Allen,* 442 U.S. 140, 142–54, 99 S.Ct. 2213, 2217–23, 60 L.Ed.2d 777 (1979)); *see also Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985); *Baker v. Muncy,* 619 F.2d 327, 329 (4th Cir.1980). The difficult question presented here is: what to do when it is unclear whether the state court relied on a procedural bar in dismissing a federal constitutional claim?[4]

The United States Supreme Court in *Harris v. Reed,* 109 S.Ct. 1038 (1989) recently addressed this question in a context similar to the one faced by this court. The habeas petitioner in *Harris* violated a state procedural bar rule by not raising his ineffective assistance of counsel claim on direct appeal. When he raised this claim at the PCR stage, the state appellate court dismissed the claim without clearly relying on the state procedural bar as an independent ground for dismissal. The state appellate court's opinion only made ambiguous reference to the applicable state procedural bar, while going on to rely on federal law in rejecting petitioner's ineffectiveness claim on its merits.

---

referring in any way to the grand larceny charge.

**2.** South Carolina Supreme Court Rule 23 provides, in relevant part:

After the return in any matter pending before this Court shall have been docketed, or at any subsequent stage of the appeal, the Court may file a memorandum opinion dismissing the appeal, affirming or reversing the judgment appealed from, or granting other appropriate relief when, in unanimous decision, the Court determines that a full written opinion would have no precedential value and any one or more of the following circumstances exist and is dispositive of a matter submitted to the Court for decision: (1) that a judgment of the trial court is based on findings of fact which are not clearly erroneous; (2) that the evidence of a jury verdict is not insufficient; ... (4) that no error of law appears.

S.C.Sup.Ct. R. 23.

**3.** The South Carolina Supreme Court's opinion reads, in its entirety: "Per curiam: Affirmed under Rule 23."

**4.** Notably, South Carolina Supreme Court Rule 23 does not list procedural default as a "circumstance ... dispositive of a matter submitted to the Court for decision." *See supra* note 2. It could be argued, therefore, that the State Supreme Court intends dismissals under Rule 23 to always be dismissals on the merits—even with regard to issues procedurally defaulted at trial. If this is the case, the court is certainly correct in addressing the merits of petitioner's first ground for habeas corpus relief. *See Griffin v. Commonwealth of Virginia,* 606 F.Supp. 941 (E.D.Va.1985). The court, however, will not assume, in the absence of South Carolina Supreme Court precedent on point, that the State Supreme Court intends all dismissals under Rule 23 to be dismissals on the merits. Accordingly, the court turns to the United States Supreme Court's instructions in *Harris v. Reed.*

In determining whether petitioner's claim was procedurally barred under *Sykes*, the Supreme Court in *Harris* ruled that the mere fact that a federal habeas petitioner failed to abide by a state procedural rule does not, in and of itself, prevent federal habeas review. *Id.* at 1042. According to the Court, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," before *Sykes* would preclude federal review. *Id.* In an attempt to solve the problem of ambiguous state-court references to state procedural bar rules, the Court held that "a procedural default. does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 1043 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed. 2d 231 (1985) and *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)).[5]

Unlike the state appellate court in *Harris*, the State Supreme Court in this case did not issue an opinion in which it made an ambiguous reference to a state procedural bar while clearly relying on federal law. It could be argued, therefore, that *Harris* simply does not apply in this context. On the other hand, the State Supreme Court's memorandum decision in this case, like the ambiguous state court opinion in *Harris*, has left this court to speculate on what basis the State Supreme Court dismissed the federal constitutional claim petitioner raises here. The rationale behind the

Court's decision in *Harris*—which is to relieve federal courts from having to determine whether a state court, in a given case, has chosen to forgive a procedural default —seems equally applicable here. *See Harris*, 109 S.Ct. at 1044 and n. 11. Therefore, in light of *Harris*, this court is not prepared to speculate that the State Supreme Court dismissed petitioner's first claim for relief in this case on procedural grounds. Instead, the court will address petitioner's first claim on its merits.

■ The appropriate standard of review for determining whether petitioner's grand larceny conviction is supported by sufficient evidence is: "Whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The reviewing court must consider circumstantial as well as direct evidence. *United States v. Tresvant*, 677 F.2d 1018 (4th Cir.1982).

■ After reviewing the record in this case in the light most favorable to the prosecution, this court is convinced that a rational fact finder could conclude from his own experience beyond a reasonable doubt that the operational tractor trailer truck stolen by petitioner was worth more than Two Hundred ($200.00) Dollars. *Brown v. Booker*, 622 F.Supp. 993, 997 (D.C.Va.1985) ("[B]esides the testimony of the owner [of the 1977 Oldsmobile Cutlass] to the effect that the car was worth four thousand dol-

5. In so holding, the Court apparently rejected the approach taken by the Fourth Circuit in *Tweety v. Mitchell*, 682 F.2d 461 (4th Cir.), *cert. denied*, 460 U.S. 1013, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1982). In *Tweety*, petitioner violated Virginia's contemporaneous-objection rule by failing to object to a burden shifting instruction at trial, and the Virginia Supreme Court dismissed his state habeas corpus petition without stating whether its decision was based on the state procedural bar or on the merits of the petition. The Fourth Circuit stated that it was not prepared to presume that the Virginia Supreme Court had dismissed petitioner's claim on the merits simply because it failed to state the grounds for its decision. *Id.* at 464. The court entered into an inquiry into what the Virginia

Supreme Court was thinking when it dismissed petitioner's claim, and concluded that the state court "probably" relied on a state procedural bar rule in rejecting it. Notably, the Court in *Harris* specifically rejected the Circuit Court's decision in that case "to try to assess the State Court's intention to the extent that this is possible." 109 S.Ct. at 1041 (citing 822 F.2d 684, 687 (7th Cir.1987)). *See Griffin v. Commonwealth of Virginia*, 606 F.Supp. 941 (E.D.Va.1985) (questioning continuing validity of *Tweety* even before *Harris* decided); *see also Meadows v. Holland*, 831 F.2d 493, 504 (4th Cir.1987, en banc) (Winter C.J., dissenting), *vacated*, — U.S. ——, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989) (remanding case for further consideration in light of *Harris*).

lars, the jurors could have concluded from their own experience that it had a value in excess of the statutory limit [of two hundred dollars].''), *appeal dismissed,* 790 F.2d 83 (1986). Notably, this is not a case in which there could be even a remote doubt that the stolen object was worth more than the statutory limit. *Cf. State v. Smith,* 274 S.C. 622, 266 S.E.2d 422 (1980) (grand larceny conviction reversed where the state presented no evidence that the value of the stolen watch exceeded Fifty ($50.00) Dollars). On the contrary, this is a case in which any rational fact finder could easily have concluded from his own experience that the value of the stolen object exceeded the statutory limit many, many times over. Accordingly, this court finds absolutely no merit in petitioner's first ground for relief.

Petitioner's second ground for habeas corpus relief is that his due process rights were violated when the trial judge admitted over his objection a number of ''bloody, gruesome'' photographs of the victim. At trial, the state moved to introduce photographs of the victim, and petitioner objected on the basis that the photos' prejudicial effect far outweighed their probative value, where he admitted to the shooting and the cause of death was not disputed. Tr. at 76, 81. The state argued, however, that the photographs were necessary as demonstrative evidence for the testimony of Dr. Sexton, a forensic pathologist, whose testimony would contradict petitioner's version of events. Tr. at 77, 81. After hearing arguments of counsel, the trial court determined that the photos were necessary to provide a basis for the pathologist's testimony regarding the crime. Tr. at 77, 81. The record reflects that Dr. Sexton referred to the photographs extensively during his explanation of the blood patterns on the victim and on the crime scene, on which he based his finding that the victim had been injured at a site away from the location where the body was found. Tr. at 111–15.

 Federal courts generally will not review a state trial court's actions in admit-

ting evidence. *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941). Only evidentiary rulings which deprive a state court defendant of fundamental fairness are cognizable in federal habeas proceedings. *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960); *see also Chance v. Garrison,* 537 F.2d 1212 (4th Cir.1976); *Barnard v. Henderson,* 514 F.2d 744 (5th Cir.1975). The trial judge admitted the photos in question based upon his finding that the probative value of the photos outweighed their potential prejudicial effect. Tr. at 5–6. After carefully examining the record, it is clear that the photos played an important role in the state's proof of its version of the facts, were not introduced merely to inflame the jury, and did not deprive petitioner of fundamental fairness at trial. Consequently, this court must dismiss this ground for habeas corpus relief.

Petitioner's third ground for federal habeas corpus relief is that his inculpatory statements to law enforcement officers, which were taped and played to the jury, were not voluntary beyond a reasonable doubt because he made them while obviously under the influence of alcohol and while naked in a police car on a bitter cold night. Petitioner also alleges that his statements were not admissible because he had not consented to the taping.

In accordance with United States Supreme Court precedent, the state trial court in this case held a hearing to determine the voluntariness of petitioner's inculpatory statements. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). During the *in camera* hearing, Officer Sales testified that petitioner was given his *Miranda* warnings immediately upon exiting the vehicle in which he was traveling and again when he was placed into Officer Sales' patrol car following arrest. Tr. at 99. (Indeed, the second set of *Miranda* warnings given to petitioner by Officer Sales appear on the tape played to the jury.)[6] Officer Sales did not question petitioner in any way except to ask for his name. Thereafter, petitioner made numer-

**6.** The tape has been made a part of the record in this case as Court's Exhibit No. 1.

ous inculpatory statements during the ride to the police station. Tr. at 100–01. Officer Sales testified that petitioner, although under the influence of alcohol, understood that he was under arrest and comprehended the situation he was in. He also testified that no law enforcement officer made any promises or threats or used any trickery to induce petitioner into making comments about the case. Tr. at 101–02.

Petitioner testified during the *in camera* hearing that, on the day in question, he had not eaten since morning and that he had been drinking alcohol all day. Tr. at 120–23. Although petitioner testified that he could not remember most of the comments he made while in the patrol car, he said that he could remember some. Petitioner stated that he was familiar with the *Miranda* procedure, stopped talking when he learned the conversation was being taped, and understood that it was in his best interest to comment no further. Tr. at 130–32. Petitioner also admitted that he was not threatened in any way, promised anything, or induced into making the comments which were taped. Tr. at 140. Thereafter, petitioner moved to exclude his statements as being involuntary on the following basis:

> Our basic position would be his intoxicated condition, being somewhat different from some of the recent cases where the advice was in the police station and just came forward and gave a statement. Our feeling would be the intoxication might have affected his normal reasoning abilities, normal ability to freely and voluntarily say what he would have said.

Tr. at 140.

The state trial court considered the evidence presented during the *in camera* hearing and found petitioner's statements to be voluntary, unelicited, and not given in response to interrogation. Tr. at 141, 144. The court then permitted the State to play the tape, but limited it from the time of the arrest to the time petitioner requested to speak with a lawyer. Tr. at 141.

This court listened carefully to the tape in question in its entirety. *See* Court's Exhibit No. 1. After doing so, the court

can only conclude that petitioner's inculpatory statements were not induced by police questioning, promises, threats, or trickery. Moreover, it appears to this court that petitioner appreciated the nature and gravity of the situation he was in. For instance, immediately upon being told that he was being tape recorded, petitioner said he wanted to talk to a lawyer, asked the police officer to cut the tape recorder off, and then said, "Ah, you can't use it anyway, you haven't read me my rights—on the tape ... you haven't read me my rights." Court's Exhibit No. 1. Thereafter, petitioner sat silent during the rest of the ride to the police station and made no more inculpatory statements on the tape played to the jury. *Id.*

■■■ In a federal habeas corpus proceeding, the voluntariness of a confession is not an issue of fact which is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), but is a legal question requiring independent consideration by this court. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Moreover, the voluntariness of a confession must be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed. 2d 854 (1973). After considering the record in this case, the parties' arguments, and the applicable law, the court is firmly convinced that petitioner's inculpatory statements were not "involuntary."

In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the United States Supreme Court flatly rejected the argument that a confession is involuntary when the defendant's mental state interfered with his "rational intellect" and "free will." In that case, the defendant had approached a law enforcement officer and stated, without any prompting, that he had murdered someone and wanted to talk about it. The defendant was advised repeatedly of his *Miranda* rights, which he said he understood. He then informed the police officer of complete details of a murder he had committed. Defendant later indicated that he had been compelled to admit to the crime by the "voice of God."

His attorneys took the position at trial that his mental state interfered with his volitional abilities and made his confession inadmissible on constitutional grounds. The Colorado trial court and the Colorado Supreme Court both agreed, holding that defendant's mental illness vitiated his attempted waiver of the right to counsel and the privilege against compulsory self-incrimination. The United States Supreme Court reversed.

The Court in *Connelly* made it clear that a defendant's confession must be the product of "coercive police conduct" before it will be found to violate the Fourteenth Amendment, even though the confession is prompted by a mental or an emotional condition that prevents it from being the product of a rational mind and free will. *Id.* at 179, 107 S.Ct. at 520. According to the Court:

> Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus. But this fact does not justify conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional voluntariness.

*Id.* (citations and footnote omitted). Because the Colorado trial court had found that the police committed no wrongful acts, the United States Supreme Court found no state action to support defendant's claimed violation of the Fourteenth Amendment's Due Process Clause.

■ Here, as in *Connelly*, defendant's taped confession admittedly and indisputably was not the product of any coercive police activity. The police did not interrogate him, make any promises to him, trick

him, or otherwise entice or pressure him in the slightest way into making inculpatory statements. Consequently, this court is compelled to conclude that, based upon the totality of the circumstances, the state proved by a preponderance of the evidence that petitioner's confession was voluntary, and thus its admission into evidence was not a violation of due process.[7] This court's decision is perfectly consistent with the policy considerations underlying the voluntariness inquiry. As in *Connelly*, "suppressing [petitioner's] statements in this case would serve absolutely no purpose in enforcing constitutional guarantees, where the purpose of excluding such evidence seized in violation of the constitution is to deter future violations of the constitution by law enforcement officials." *Id.* at 166, 107 S.Ct. at 521.

Because petitioner's inculpatory statements, unlike some of those inculpatory statements made by the defendant in *Connelly*, were not the product of a custodial interrogation, the court need not, and does not, address the additional question of whether petitioner voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see United States v. Baldwin*, 644 F.2d 381, 383–84 (5th Cir.1981) (*per curiam*) (suspect spontaneously volunteered remarks made in response to seeing agents search his car and overhearing radio broadcasts admissible because unforeseeable result of officer's words and actions); *United States v. Henderson*, 770 F.2d 724, 727–28 (8th Cir.1985) (defendant's statements during ride to police station admitted when voluntary and not in response to interrogation); *United States v. Smith*, 776 F.2d 892, 898 (10th Cir.1985) (statement made to Bureau of Indian Affairs' investigator about circumstances of accident spontaneous and not product of interrogation); *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984) (defendant's statements volunteered to officer not barred by Fifth

---

7. Contrary to petitioner's contention, the state need not prove his confession voluntary beyond a reasonable doubt. According to the Court in *Connelly*, the state need only prove his confession voluntary by a preponderance of the evidence. 479 U.S. at 166–70, 107 S.Ct. at 522–23.

Amendment), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

■■■■■ Petitioner's contention that his consent to the tape recording was necessary for its admissibility into evidence is also without merit. The Supreme Court in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) held that challenges resting on the Fourth Amendment are not cognizable in a federal habeas proceeding where, as here, there has been a full and fair opportunity to raise them in the state court. Furthermore, this court notes that neither Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, nor the Fourth Amendment protects parties to an intercepted conversation who speak with no legitimate expectation of privacy. *See* 18 U.S.C. § 2510(2) (oral communication defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectations"); *United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (Fourth Amendment does not protect expectation of privacy in conversation with government agent whether electronically recorded or not); *United States v. Padin,* 787 F.2d 1071, 1075–76 (6th Cir.) (absentee landlord had no expectation of privacy when he telephoned premises of his leasehold and voluntarily communicating incriminating statements without attempting to determine identity of answering individual), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986). Similarly, no violation occurs when a party to a conversation consents to its interception. *See* 18 U.S.C. § 2511(2)(c) (persons acting under color of law may intercept if party to communication); *United States v. White,* 401 U.S. 745, 752–53, 91 S.Ct. 1122, 1126–27, 28 L.Ed.2d 453 (1971) (testimony of government agents who conducted surveillance admissible when informant consented to recording conversation with defendants); *United States v. Quinones,* 758 F.2d 40, 43 (1st Cir.1985) (evidence permissible when conversation taped with the consent of one party, notwithstanding contrary provisions of Puerto Rican Constitu-

tion); *United States v. Mitlo,* 714 F.2d 294, 298 (3d Cir.) (evidence admissible when informant, whose identity was concealed from defendant, consented to recording conversation with defendant), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983); *United States v. Eschweiler,* 745 F.2d 435, 437 (7th Cir.1984) (evidence admissible when informant consented to recording of a conversation with defendant), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985); *United States v. Davis,* 780 F.2d 838, 846 (10th Cir.1985) (tape recording of telephone conversation admissible when recording made by party to conversation). Since petitioner in this case had a full and fair opportunity at trial to raise this Fourth Amendment issue, and since he spoke without any expectation of privacy to law enforcement officers who consented to the taping, his complaint that he was tape recorded without his consent is not a valid ground for relief.

Lastly, petitioner contends that his trial counsel was ineffective in that he:

1. Was only part-time counsel with part-time staff and little funds to represent petitioner;

2. Failed to move to dismiss the indictments prior to trial;

3. Failed to interview all State witnesses prior to trial;

4. Failed to move for a mistrial after being approached by a jury member selected in the trial, talking about the trial, at the juror's place of employment;

5. Failed to move to suppress the evidence;

6. Failed to object to the closing argument of the solicitor;

7. Failed to investigate the facts of the victim's past as requested by petitioner;

8. Informed petitioner after trial but before sentencing that the jury foreman had heard that the petitioner was a "hit man" and "made the entire jury convict petitioner of at least manslaughter."

Petitioner raised claims 1 through 7 in his state PCR application, and the circuit court denied these claims on their merits. Petitioner then sought a writ of certiorari from the South Carolina Supreme Court, but his petition only raised claim 7 as a ground for relief. Moreover, petitioner failed to raise claim 8 in his state PCR application or in his appeal from the circuit court's denial of PCR. In other words, of the above eight claims, claim 7 is the only one which petitioner presented to the South Carolina Supreme Court. Respondents contend, therefore, that claims 1 through 6, and claim 8 are all procedurally barred under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).[8]

▆▆ Section 17–27–90 of the South Carolina Code of Laws requires that all available grounds for PCR relief be asserted in his first application. S.C.Code Ann. § 17–27–90 (Law.Co-op.1985); *see also Land v. State*, 274 S.C. 243, 262 S.E.2d 735 (1980) (successive PCR application looked upon with great disfavor). Petitioner's failure to adhere to this state procedural rule with regard to claim 8 bars it from consideration in his federal habeas corpus case without a showing of valid cause and actual prejudice under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977). *See Engle v. Isaac*, 456 U.S. 107, 113–14, 102 S.Ct. 1558, 1564–65, 71 L.Ed.2d 783 (1982) (applying procedural default rule to claim that had never been raised in state court); *Teague v. Lane*, —— U.S. ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (petitioner procedurally barred from raising claim in federal habeas proceeding which he did not raise in state court; court noted that rule announced in *Harris v. Reed* is not applicable in a case where the claim was never presented to state court). Because petitioner cannot demonstrate cause for his procedural de-

fault, the court must dismiss claim 8 under *Sykes*.

The only "cause" the petitioner even alludes to is his PCR attorney's alleged misconduct in failing to press claim 8 in state court. The Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) recently addressed the definition of cause for purposes of the *Sykes* procedural bar. In *Carrier*, the Court held that "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default.... *Id.* at 492, 106 S.Ct. at 2648. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Id.* at 488, 106 S.Ct. at 2646. In this case, petitioner has not pointed to an impediment external to his defense that would constitute cause under *Sykes*. On the contrary, in his "Motion for Partial Summary Judgment" and in his "Objection to the Magistrate's Report and Recommendation," petitioner essentially concedes that his state PCR counsel made a deliberate tactical decision not to raise claim 8.[9]

The Supreme Court in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) held that "a deliberate tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that will warrant excusing a defendant's failure to adhere to a state's legitimate rules for the fair and orderly disposition of its criminal cases." *Id.* at 534, 106 S.Ct. at 2666. The Court in *Murray v. Carrier* also stated that "default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim." *Id.* at 486, 106 S.Ct. at 2644 (citing *Sykes*, 433 U.S. at 91 n. 14, 97 S.Ct. at 2508 n. 14 and *Reed v. Ross*, 468

---

8. Notably, the exhaustion doctrine is not applicable here because, as mentioned earlier, respondents have waived exhaustion as a defense in this case. *See supra* pp. 3–4.

9. To the extent that petitioner could be complaining that his PCR counsel deliberately forewent raising an issue he (counsel) knew to have a reasonable possibility of success, petitioner's argument is completely baseless and against the clear weight of the record.

U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984)).

Petitioner has not pointed this court to any extraordinary circumstances, and this court is aware of none in this record, which would justify treating PCR counsel's tactical decision not to raise claim 8 as cause under *Sykes*. Because the court finds no cause for petitioner's procedural default, the court need not, and does not, address the prejudice prong of the *Sykes* test.

Respondents also urge the court to find claims 1 through 6 procedurally defaulted since petitioner failed to raise them on appeal from the circuit court's denial of PCR. Because it is not at all clear whether petitioner procedurally defaulted on claims 1 through 6, the court addresses and disposes of claims 1 through 6, along with claim 7, on their merits.[10]

In determining whether petitioner received ineffective assistance of counsel at trial, the court must apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires the defendant to show: (1) that his counsel's performance fell below an objective standard of reasonableness; (2) that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 687, 104 S.Ct. at 2064.

The court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.; see also Jeffers v. Leeke*, 835 F.2d 522 (4th Cir. 1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988). The language and tenor of *Strickland* makes it clear that petitioner here bears a very heavy burden of presentation and proof in making out a claim for ineffectiveness. *Strickland* requires that judicial scrutiny of counsel's performance be highly deferential and instructs district courts to indulge a strong presumption that counsel rendered adequate assistance. *Id.* at 689, 104 S.Ct. at 2065. Petitioner in this case must rebut the presumption that the challenged omissions of his counsel were sound trial strategy under the circumstances. *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The court finds that the conduct challenged by petitioner in claims 1 through 7, individually or even in combination, do not meet either prong of the *Strickland* test.

 Claim 1 is nothing more than a generalized complaint that petitioner's trial counsel's office was overworked, understaffed, and underfunded. Such a claim will not sustain a charge of ineffectiveness under *Strickland* unless petitioner can show that it caused counsel's performance

---

**10.** In *Whitley v. Bair*, 802 F.2d 1487 (4th Cir. 1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987), petitioner's federal habeas corpus application contained issues that he had raised in his state habeas corpus application but had failed to raise on appeal from the denial of state habeas corpus relief. The district court concluded that, under *Wainwright v. Sykes*, those state habeas claims which petitioner had not appealed to the Virginia Supreme Court were procedurally barred, and the Fourth Circuit affirmed. The court in *Whitley* held that "failure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims." 802 F.2d at 1500. In so holding, the court relied upon Virginia Supreme Court Rule 5:21, which provides, in relevant part: "Only errors assigned in the petition for appeal will be noticed by this court and no error not so assigned will be admitted as a ground for reversal of a decision below." Va.Sup.Ct. R. 5:21 (1983). The Fourth Circuit ruled that Whitley's failure to comply with Rule 5:21 constituted a procedural default sufficient to preclude federal habeas review of

those claims which the circuit court declared *Whitley* to have procedurally defaulted. 802 F.2d at 1502.

There are several distinctions between *Whitley* and this case which makes this court reluctant to apply *Whitley*'s holding here. The first distinction is that the last state court rendering a judgment in this case addressed the merits of claims 1 through 6, while the last state court to address Whitley's unappealed state habeas corpus claims disposed of them on procedural grounds. 802 F.2d at 1502. *See Harris v. Reed*, 109 S.Ct. at 1043 ("a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). The second distinction between *Whitley* and this case is the absence of a South Carolina statute or court rule with language similar to that of Va.Sup.Ct. R. 5:21. *Cf.* S.C. Sup.Ct. R. 50(9)(e). In light of these distinctions and the Supreme Court's recent ruling in *Harris v. Reed*, this court declines to dispose of claims 1–6 on procedural grounds.

to fall below some objective standard of reasonableness and actually prejudiced his chances at trial. Petitioner simply has not met his burden in this respect.

■ Claim 2, which takes issue with counsel's failure to move to dismiss his grand larceny indictment at trial, is utterly without merit since petitioner conceded at PCR that the indictment was not fatal. Tr. 520–21. If his indictment was not fatal, his trial counsel certainly was not ineffective in failing to move the court to dismiss it.

■ The court also finds no merit in claim 3, which alleges that counsel failed to interview all of the state's witnesses prior to trial. Counsel testified at PCR that he talked with every witness that he felt required a pretrial interview (e.g., Dr. Sexton (pathologist) and Officer Sales (primary arresting officer who drove petitioner to police station)). Tr. 536–38. Counsel said that he did not talk to Lieutenant Dan Defreese (firearms expert) because he (counsel) was already familiar with the ballistics aspects of the case. Tr. 538–39. Counsel also did not talk to all of the officers involved in petitioner's arrest or to a truck driver who provided the police some information, but it is clear that he did not do so because of the relative lack of importance of their testimony. Tr. 539–40. Counsel's failure to interview the witnesses mentioned above is simply not proof that his performance fell outside any objective standard of reasonableness and certainly cannot be said to have actually prejudiced petitioner's chances at trial.

■ In claim 4, petitioner asserts that counsel should have moved for a mistrial after he (counsel) was approached by a member of the jury in a grocery store during the trial. At the PCR hearing, counsel explained fully and adequately his brief and innocuous contact with a member of the jury during the trial. Tr. at 543–44. While counsel was shopping at a grocery store where the juror worked, the juror approached counsel and said, "Do you think this thing's going to be over with tomorrow?" Counsel responded, "I hope so" or "I think so." The juror then said, "This is really wearing me out." After

leaving the grocery store, counsel immediately contacted the judge and reported the incident. The next day the matter was taken up on the record, and counsel for both parties, as well as the judge, all agreed that the contact described above was purely innocuous and not grounds for a mistrial. Counsel not only believed that the incident did not require a mistrial, he testified that he did not want a mistrial in this case because he felt very lucky to have an all white jury in a case where his client (who is white) admitted to killing a black man. Tr. 543–44. Petitioner has failed to rebut the presumption that trial counsel's actions in this regard were sound trial strategy under the circumstances. Furthermore, the court fails to see how this incident could have prejudiced petitioner's chances at trial.

Petitioner's claim 5, that counsel failed to move to suppress evidence, is likewise without merit. Counsel did move to suppress the bloody photos of the victim, as well as petitioner's tape recorded inculpatory statements. Petitioner has pointed this court to no other damaging evidence which counsel failed to move to suppress.

■ With regard to claim 6, counsel explained that he did not object to the closing argument of the solicitor because he felt that the solicitor was entitled to put forth his theory of the case—even though it was not flattering of petitioner. Counsel said he put forth his own theory of what happened in his closing argument, and he felt that it was up to the jury to decide whose version to believe. In counsel's view, the solicitor's closing argument was not prejudicial and would not have sustained an objection. After considering the applicable portions of the trial record, the court must conclude that counsel's failure to object to the solicitor's closing argument did not cause his performance to fall below any objective standard of reasonableness and did not prejudice petitioner's trial.

■ In claim 7, petitioner contends that he shot the victim in order to protect himself from a homosexual attack, and that counsel was ineffective in failing to con-

duct an adequate investigation into the victim's past social life to bolster his defense. Counsel conducted a thorough check into whether the victim had a criminal record. He had both the solicitor's office and an investigator with the "Joint Defender Corporation" for Chester and Lancaster Counties to investigate the matter, and neither investigation turned up anything. Counsel testified that the kind of investigation petitioner asked him to make into the victim's past was, in counsel's judgment, unfeasible and unlikely to lead to information helpful to petitioner's defense. Tr. at 540. The victim was a truck driver for many years with various routes and was from the Illinois area. *Id.* Without any specific information or worthwhile leads, counsel judged it to be a mere fishing expedition and a waste of time and effort to conduct the kind of widespread investigation that petitioner wanted. Counsel opted to spend his time and resources exploring what he thought were more promising and worthwhile avenues in preparing petitioner's defense. *Id.* It is clear on the record before this court that counsel made an informed, strategic decision not to pursue petitioner's requested widespread investigation into the victim's past.

Under the circumstances of this case, the court finds that trial counsel articulated legitimate reasons for his strategic decision not to conduct a widespread investigation into the victim's past. Petitioner, therefore, has not overcome the *strong presumption* that his counsel's conduct falls within the wide range of reasonable professional assistance.

In sum, petitioner has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Therefore, petitioner has failed to establish his ineffective assistance of counsel claim under *Strickland v. Washington.* As the Fourth Circuit observed in *Jeffers v. Leeke,* "while petitioner may not have been afforded a perfect trial, he was given a fair trial, free of prejudicial error." 835 F.2d at 525.

Based upon the foregoing reasoning and cited authorities, the court finds that petitioner has failed to establish a ground for federal habeas corpus relief, 28 U.S.C. § 2254. Therefore, the court grants the respondents' motion for summary judgment on all claims and dismisses the instant petition. Rule 56, Fed.R.Civ.Proc.

IT IS SO ORDERED.